IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ING BANK N.V., | * | |
|     Plaintiff, | * | |
| v. | | |
| | * | Civil Action No. 2:16-cv-01003 |
| M/V CHARANA NAREE, IMO No. 9296303, her engines, tackle, equipment, furniture, appurtenances, etc., *in rem* | * | JUDGE CAIN |
| | * | MAGISTRATE JUDGE KAY |
|     Defendant *in rem*, | * | |
| * * * * * * | | |
| MACOIL INTERNATIONAL S.A., | * | |
|     Intervening Plaintiff, | * | **IN ADMIRALTY** |
| v. | * | |
| M/V CHARANA NAREE, IMO No. 9296303, her engines, tackle, equipment, furniture, appurtenances, etc., *in rem* | * | |
|     Defendant *in rem*, | * | |
| and | * | |
| ING BANK N.V. | * | |
|     Cross-Defendant *in personam*. | * | |
| * * * * * * * * * * * * | | |

**MACOIL STATEMENT OF UNCONTESTED MATERIAL FACTS
SUPPORTING MACOIL'S SUMMARY JUDGMENT
<u>MOTION</u>**

1. No one has ever paid Macoil for the USD 200,488.71 of bunkers Macoil provided the M/V CHARANA NAREE ("Vessel")(Macoil Verified Intervening Complaint, ECF 8_2).

2. Macoil retained title to the bunkers. (Macoil sales terms, Exhibit B to Macoil's Summary Judgment Memorandum, filed herewith).

3. Egyptian law, through which Macoil has the right to arrest the Vessel, controls Macoil's provision of the bunkers to the Vessel. (Macoil sales terms, Exhibit B to Macoil's Summary Judgment Memorandum, filed herewith).

4. Macoil invoiced the value of its bunkers, **$200,488.71** - to the Master and Owners of the Vessel, and OW (Macoil Invoice, **Exhibit A** to Macoil's Summary Judgment Memorandum, filed herewith).hereto). Macoil's invoice confirms Macoil's insistence that:

> The sale and delivery of the petroleum products described above is subject to the Terms & Conditions contained on the reverse side of this invoice.
>
> The acceptance of the petroleum products by Vessel named above shall be deemed to constitute acceptance and approval of said Terms & Conditions

5. Macoil provided its bunkers to the Vessel pursuant to Macoil's sales terms and conditions (**Exhibit B** to Macoil's Summary Judgment Memorandum, filed herewith).hereto) stating in pertinent part:

> **PAYMENT**
>
> Unless otherwise agreed, payment for each delivery shall be made without discount in United States Dollars to Seller at its above address at the latest within thirty (30) days from the date of each delivery or within seven (7) days of the date of Seller's invoice showing the quantity delivered and the amount due including charges. Each delivery shall be deemed to constitute a separate contract. Sales are on the credit of receiving vessels as well as on the Buyer's promise to pay, and amounts due shall be liens against such vessels.
>
> \* \* \*
>
> The delivery of marine fuel oil hereunder to any vessel shall create a valid maritime lien in favor of Seller or its Supplier. **"The Romalpa clause to apply".** (Until full payment of full amount is effected, it is agreed that the Buyer is in possession of the bunkers solely as bailee for the Seller) **This agreement, its performance and**

**enforcement (inclusive of maritime liens arising hereunder) shall be governed and determined by the maritime law of Egypt**.

(Emphasis added).

6. The OW sales terms (clause "L.4", exhibited to ING's complaint) that ING insists control, incorporate Macoil's sales terms:

> These Terms and Conditions are subject to variation in circumstances **where the physical supply of the Bunkers is being undertaken by a third party** [herein Macoil] which insists that the Buyer [which OW's terms also defines as the Vessel's Owners/Charterers] is also bound by its own terms and conditions. In such circumstances, **these Terms and Conditions shall be varied accordingly, and the Buyer shall be deemed to have read and accepted the terms and conditions imposed by the said third party**.

7. OW's terms – also exhibited to the ING Complaint, provide as follows:

H. TITLE
H.1 Title in and to the Bunkers delivered and/or property rights in and to such Bunkers shall remain vested in the Seller until full payment has been received by the Seller of all amounts due in connection with the respective delivery. The provisions in this section are without prejudice to such other rights as the Seller may have under the laws of the governing jurisdiction against the Buyer or the Vessel in the event of nonpayment.

H.2 Until full payment of the full amount due to the Seller has been made and subject to Article G.14 hereof, the Buyer agreed that it is in possession of the Bunkers solely as Bailee for the Seller, and shall not be entitled to use the Bunkers other than for the propulsion of the Vessel, nor mix, blend, sell, encumber, pledge, alienate, or surrender the Bunkers to any third party or other Vessel.

/

/

8. OW's sales confirmation, exhibited to the ING complaint, **expressly identifies Macoil as "Supplier"** with the bunkers provided to the "account of" "MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV CHARANA NAREE" and charterer Copenship (now, out of business).

Dated: January 28, 2020.

Respectfully Submitted,

/s/ J. Stephen Simms
J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
410-783-5795
jssimms@simmsshowers.com

Macoil Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2020 caused the foregoing to be filed on this Court's CM/ECF system for service on all record counsel.

/s/ J. Stephen Simms