UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| ING BANK, N.V. | CASE NO. 2:16-CV-01003 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| M/V CHARANA NAREE | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 72] filed by plaintiff ING Bank, N.V. ("ING") and seeking dismissal of the cross-claim brought by intervenor Macoil International, S.A. ("Macoil"). Macoil opposes the motion. Doc. 89.

## I.
### BACKGROUND

This suit is one of several arising from the collapse of the O.W. Bunker Group, a global operation which supplied bunkers (fuel oil) to ships in international commerce. The present action relates to the M/V Charana Naree, a vessel sailing under the flag of Thailand, which is owned by foreign corporation Precious Ventures, Ltd. ("PVL") and was operated on a time charter by the Danish firm Copenship Bulkers A/S ("Copenship"). Doc. 76, att. 3, pp. 8–9; *see* doc. 33 (PVL corporate disclosure).

In October 2014, Copenship ordered bunkers from O.W. Bunker & Trading A/S ("OW Denmark") to refuel the vessel. The order was memorialized through a sales order confirmation and, after a change to the volume of fuel requested, revised sales order confirmation issued by OW Denmark. *See* doc. 73, atts. 4 & 5 (sales orders). OW Denmark

-1-

then ordered the oil from O.W. Spain, S.L. ("OW Spain"), a Spanish member of the OW Bunker Group, which in turn ordered it from Macoil International, S.A. ("Macoil"), a Liberian corporation. *See* doc. 73, atts. 9–11, 13; doc. 77, att. 2 (purchase orders and invoices). The bunkers were delivered to the M/V Charana Naree in Gibraltar by Vemaoil Company Ltd., Macoil's delivery agent/subcontractor. Macoil's invoice, dated October 30, 2014, reflects an outstanding debt of $200,488.71 owed by OWS Spain on the bunkers. *See* doc. 73, att. 14. Since that time, Copenship has gone bankrupt and neither Macoil nor the OWS Bunker Group has been paid for the fuel oil.

ING Bank N.V., a Dutch banking and financial services corporation, asserts that it is "an assignee of certain accounts, assets and maritime liens" of OW Denmark through a December 2013 security agreement with that company. Doc. 1. ING filed suit in this district, where the M/V Charana Naree was then docked, in 2016 in order to enforce its alleged lien against the vessel and its owner. Macoil has intervened in the action, asserting a competing lien as supplier of the bunkers. Doc. 29. It also brings a breach of contract claim against ING, as assignee of OW Denmark. *Id.*

ING now moves for summary judgment on the breach of contract claim, asserting that OW Denmark did not assign any obligations on supply contracts to ING. It also maintains that, if Macoil has a claim for non-payment, that claim lies against OW Spain in bankruptcy rather than against OW Denmark. Macoil opposes the motion.[1]

---

[1] Macoil responded to the motion by answering ING's statement of uncontested facts. It deems the great majority uncontested or unknown to Macoil, but objects to a few as statements of law rather than fact. *See* doc. 89; doc. 89, att. 2.

# II.
## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

# III.
## LAW & APPLICATION

The Security Agreement between OW Denmark and ING was executed on December 19, 2013. *See* doc. 72, att. 18. Paragraph 20 provides that the agreement is governed by English law. *Id.* at 32. Under the terms of the agreement, a "new supply contract" is

> any one-time contract, or contract used as a framework agreement (howsoever described) or the overarching general terms and conditions of [O.W. Bunker Group], in each case governed by English law and relating to the sale of oil products traded by the Group, as governs the contractual relationship between the relevant debtor and a Danish Receivables Chargor [i.e., O.W. Denmark] following the date of this deed.

*Id.* at 9–10. "New supply receivables" are "any amount owing to a Danish Receivables Chargor under any New Supply Contract." *Id.* at 10. Under § 2.3(b), OW Denmark absolutely assigns its rights, title, and interests in respect of new supply receivables to ING. *Id.* at 12.

Because OW Denmark's contract for refueling the M/V Charana Naree was executed after December 19, 2013, it is a "new supply contract" and the debt on that contract is a "new supply receivable." Under the terms of the agreement, OW Denmark validly assigned its rights on that agreement to ING. There is no language, however, that reflects an assignment of obligations on new supply receivables under English or Danish law.[2] Accordingly, there is no basis for finding ING liable for any breach of performance by OW Denmark.

---

[2] Solicitor Antony James Zacaroli, QC provided declarations for ING in other OW Bunker group cases, including *Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063 (11th Cir. 2017), and *ING Bank v. M/V Temerara*,

Even if there were some voluntary assignment or assumption of duties by ING, Macoil cannot make out a prima facie breach of contract claim. The only basis for the alleged transfer of obligations is the security agreement between ING and OW Denmark. Macoil, on the other hand, contracted with OW Spain. There is no reference to the OW Bunker Group or OW Denmark on OW Spain's purchase orders to Macoil. *See* doc. 72, atts. 10 & 11. As the Southern District of New York observed in a similar contractual chain involving OW Bunker entities, there is no evidence of an underlying contract between the physical supplier and the OW Bunker entity that entered into the security agreement with ING. *See ING Bank N.V. v. M/V Temara*, 203 F.Supp.3d 355, 370 (S.D.N.Y. 2016), *aff'd*, 892 F.3d 511 (2d Cir. 2018). None of the evidence supplied supports an agency relationship between the OW entities. Macoil also fails to support any other theory under which OW Denmark could be held liable for OW Spain's contractual obligations.[3]

---

342 F.Supp.3d 558 (S.D.N.Y. 2018). Solicitors Jennifer Marshall, QC and Peter Schaumburg-Müller have provided opinions in this matter. *See* doc. 72, atts. 16 & 19. Marshall confirms the application of Zacaroli's opinions to this matter and explains his unavailability to give an opinion here, based on a recent judicial appointment. *Id.*; *see also* doc. 72, atts. 20 & 21 (original and supplemental Zacaroli declarations). Zacaroli opined that there was no possible construction of the security agreement "under which the subject matter of the assignment extends to *obligations* owed *by* OW Bunker to another party." Doc. 72, att. 20, p. 10 (emphasis in original). He further observed that it is clearly established under English law that such an assignment could only be accomplished by novation of the contract, requiring consent of both original contracting parties, which has not occurred in this matter. *Id.* at 10–12.

Schaumburg-Müller offers an opinion based on the argument, not raised here, that the English choice of law provision must be disregarded and Danish law should govern the security agreement. Doc.72, att. 16. He notes that Danish law also requires acceptance from the obligee for any assignment of duties, and that no such acceptance appears to have been given in this matter. He likewise concludes that the security agreement contains a valid assignment of rights to the Copenship refueling contract but no assignment of obligations. *Id.*

[3] Macoil has generally alleged that OW Denmark is liable on the contract either as the vessel owner or charterer's collection agent. Doc. 29. OW Denmark employee Claus Mortensen denies the allegations in his sworn declaration, going into several particulars on the business relationships between the entities. *See* doc. 72, att. 3. Macoil does not challenge Mortensen's declaration or provide any evidence to refute his statements.

Finally, Macoil has cited *Martin Energy Services, LLC v. M/V Bravante IX*, 233 F.Supp.3d 1269 (N.D. Fla. Jan. 2017), *aff'd*, 733 F. App'x 503 (11th Cir. 2018), as supporting "the physical supplier's right to be paid" based on the court's determination that the supplier could recover in *quantum meruit*. Doc. 77, att. 1, p. 6. As ING observes, *quantum meruit*/unjust enrichment is an *in personam* claim raised under state law. *ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 522 (2d Cir. 2018). Macoil has only raised a breach of contract claim against ING and an *in rem* claim against the vessel. Doc. 29. Though it made passing mention of "unjust enrichment" under the *in rem* claim, the only briefing on this issue is a citation to *M/V Bravante IX* in its motion for summary judgment. Accordingly, no request for equitable remedies has been adequately raised or briefed.

As the court noted in an accompanying ruling, it understands the potential inequity involved for physical suppliers in these cases. The structure of the transactions, however, places the risk with those parties. In the many cases handling the fallout of OW Bunker's collapse, only the *M/V Bravante IX* courts have found grounds for equitable remedies to the physical suppliers. Given the late stage of the litigation, and the preceding years during which Macoil might have become aware of the 11th Circuit's approach and adequately raised the issue, the court declines to consider it any further.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 72] will be **GRANTED** and Macoil's cross-claim will be **DISMISSED WITH PREJUDICE** at Macoil's cost.

**THUS DONE AND SIGNED** in Chambers on this 5th day of March, 2020.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**